## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

No. 22-1449

---

### UNITED STATES OF AMERICA
**Appellee**

**v.**

### HAKIM WILLIAMS
**Appellant**

---

Appeal from the February 24, 2022 Judgment of Sentence Entered in the United States District Court for the Eastern District of Pennsylvania at Criminal No. 18-579-4

---

### BRIEF FOR APPELLANT HAKIM WILLIAMS

---

Joseph L. Coleman, Esquire
Coleman Defense LLC
PA Bar ID No. 314867
1717 Arch Street, Suite 320
Philadelphia, PA 19103
215-564-1634
joe@philadelphiadefense.com
Attorney for Hakim Williams

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ...........................................................................1

   A.  SUBJECT MATTER JURISDICTION .........................................................1

   B.  APPELLATE JURISDICTION .................................................................1

STATEMENT OF THE ISSUES ..........................................................................2

STATEMENT OF RELATED CASES ...................................................................4

STATEMENT OF THE CASE ...........................................................................6

SUMMARY OF ARGUMENT..........................................................................13

ARGUMENT ............................................................................................15

   A.  THE GOVERNMENT BREACHED THE PLEA AGREEMENT WHEN THEY SOUGHT THE OBSTRUCTION ENHANCEMENT AFTER STIPULATING TO ACCEPTANCE OF RESPONSIBILITY..................................................................................15

   B.  THE DISTRICT COURT ERRED BY APPLYING THE OBSTRUCTION ENHANCEMENT AND DENYING THE ACCEPTANCE OF RESPONSIBILITY DEPARTURE..........................19

   C.  THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING A SENTENCE BASED ON CLEARLY ERRONEOUS CONCLUSIONS..............................................................23

   D.  THE DISTRICT COURT VIOLATED WILLIAMS' DUE PROCESS BY IMPROPERLY MAKING HIMSELF A WITNESS TO ALLEGED OBSTRUCTIVE CONDUCT......................25

   E.  THE DISTRICT JUDGE'S CONDUCT CREATED AN APPEARANCE OF BIAS WHICH REQUIRES A RECUSAL FOR A RESENTENCING HEARING. ..........................................28

CONCLUSION ...........................................................................................30

RULE 32 CERTIFICATION .................................................................................31

CERTIFICATE OF BAR MEMBERSHIP .............................................................32

CERTIFICATE OF IDENTICAL COMPLIANCE .................................................33

CERTIFICATE OF VIRUS CHECK....................................................................34

CERTIFICATE OF SERVICE..............................................................................35

# TABLE OF CITATIONS

## Statutes and Rules

18 U.S.C. § 841(b)(1)(A)...................................................................1

18 U.S.C. § 846............................................................................1

18 U.S.C. § 922(g).........................................................................1

18 U.S.C. § 924 ...........................................................................1

18 U.S.C. § 3231 ..........................................................................1

18 U.S.C. § 3742(a) .......................................................................1

28 U.S.C. § 455 ..........................................................................28

28 U.S.C. § 1291 ..........................................................................1

Fed.R.E. § 605 .......................................................................2, 23

USSG § 3C1.1 ............................................................................19

USSG § 3C1.2 .............................................................................7

USSG § 3El.1(a) ...........................................................................7

USSG § 3E1.l(b).......................................................................7, 20

## Cases

*Liteky v. United States*, 510 U.S. 540 (1994) .........................................28

*McKeever v. Warden SCI-Graterford*, 486 F.3d 81 (3d Cir. 2007) .......................15

*Quercia v. United States*, 289 U.S. 466 (1933)........................................25

*Santobello v. New York*, 404 U.S. 257 (1971).........................................15

*United States v. Blanchard*, 542 F.3d 1133 (7th Cir. 2008) .............................. 27-28

*United States v. Collins*, 25 F.4th 1097 (8th Cir. 2022) ............................................18

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993) .............................................29

*United States v. Davenport*, 775 F.3d 605 (3d Cir. 2015)......................................16

*United States v. Fumo*, 655 F.3d 288 (3rd Cir. 2011) ...................................2, 19, 24

*United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001) ...........................................15

*United States v. Moscahlaidis*, 868 F.2d 1357 (3d Cir. 1989) ...............................15

*United States v. Nickl*, 427 F.3d 1286 (10th Cir. 2005) ..........................................27

*United States v. Schwartz*, 511 F.3d 403 (3d Cir. 2008) .................................. 15-16

*United States v. Sokolow*, 91 F.3d 396 (3d Cir. 1996) ............................................25

*United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009).......................................23-24

*Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155 (3d Cir. 2004)..........3, 28

## JURISDICTIONAL STATEMENT

### A. Subject Matter Jurisdiction

A December 12, 2018, indictment in the Eastern District of Pennsylvania charged Hakim Williams, Appellant, with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). An October 9, 2019, superseding indictment in the Eastern District of Pennsylvania charged Williams with possession of methamphetamine, heroin, and fentanyl with intent to distribute; possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c); and possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). *United States v. Hakim Williams*, No. 18-cr-579-4 (E.D. Pa.). The district court had original jurisdiction over the prosecution pursuant to 18 U.S.C. § 3231.

### B. Appellate Jurisdiction

Williams appeals from the judgment of sentence entered against him by the Honorable Gerald J. Pappert on February 24, 2022. This Court has jurisdiction to review the final judgment pursuant to 28 U.S.C. § 1291 and the final sentence pursuant to 18 U.S.C. § 3742(a). On March 10, 2022, Williams filed a timely notice of appeal. App.1

# STATEMENT OF THE ISSUES

**A.** Whether the Government breached the plea agreement when they sought the obstruction enhancement after stipulating to acceptance of responsibility?

**Preservation of the Issue:** Defense counsel objected to the application of the obstruction enhancement in a sentencing memorandum and contested it at sentencing. App.60-65, App.173-79.

**B.** Whether the district court erred by applying the obstruction enhancement and denying the acceptance of responsibility departure?

**Preservation of the Issue:** Defense counsel objected to the application of the obstruction enhancement in a sentencing memorandum and contested it at sentencing. App.60-65, App.173-79.

**C.** Whether the district court abused its discretion by imposing a sentence based on clearly erroneous conclusions?

**Preservation of the Issue:** While no objection is necessary to preserve this issue, defense counsel nonetheless objected in a sentencing memorandum and contested it at sentencing. *See United States v. Fumo*, 655 F.3d 288, 309 (3rd Cir. 2011). App.60-65, App.173-79.

**D.** Whether the district court violated Williams' due process by improperly making himself a witness to alleged obstructive conduct?

**Preservation of the Issue:** No objection is necessary to preserve this issue. *See* Fed.R.E. § 605.

**E.** Whether the district court's conduct created an appearance of bias which requires a recusal for a resentencing hearing?

**Preservation of the Issue:** A request for recusal does not have to be made at the district court in order to preserve the issue on appeal. *See Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 166 (3d Cir. 2004).

**STATEMENT OF RELATED CASES**

In addition to Williams, the grand jury also indicted co-defendants Curshawn Banks, Arthur Rowland, Isiah Ulmer, Jeffrey Stamps, and Danielle Bradford and charged them with various counts of conspiracy, drug manufacturing, and firearm offenses.

Curshawn Banks pleaded guilty and did not appeal. *United States v. Curshawn Banks*, No. 2:18-cr-00579-001 (E.D. Pa.).

Arthur Rowland was found guilty after trial. *United States v. Arthur Rowland*, No. 2:18-cr-00579-002 (E.D. Pa.). Rowland has appealed to this Court, but the appeal has not been ruled on as briefs have not yet been filed. *United States v. Arthur Rowland*, No. 22-3022 (3d Cir.).

Isiah Ulmer pleaded guilty and appealed to this Court. *United States v. Isiah Ulmer*, No. 2:18-cr-00579-003 (E.D. Pa.). This Court dismissed Ulmer's appeal. *United States v. Isiah Ulmer*, No. 21-1619 (3d Cir.).

Jeffrey Stamps pleaded guilty and did not appeal. *United States v. Jeffrey Stamps*, No. 2:18-cr-00579-005 (E.D. Pa.).

Danielle Bradford pleaded guilty and did not appeal. *United States v. Danielle Bradford*, No. 2:18-cr-00579-006 (E.D. Pa.).

Based on counsel's review of the dockets, briefs have not been filed in any other appeal, and the other case on appeal involved a trial separate from Williams (Williams pleaded guilty). Accordingly, counsel does not believe that those

4

appeals are likely to involve the same issues. Counsel is not aware of any other related proceeding before this Court or any other court or agency, local, state, or federal.

## **STATEMENT OF THE CASE**

The facts relevant to this Appeal began on March 11, 2020, when a hearing was held to determine whether counsel's representation of Williams created a conflict of interest ("Conflict Hearing"). At that hearing, the Government alleged that the following occurred:

> At that hearing, there were several witnesses including an individual who was expected to testify at trial as a cooperating witness (the "CW"). During the hearing, an individual came into the courtroom and, while the CW was testifying, moved into the CW's line of sight. As soon as the CW completed his testimony the individual left the courtroom; signaling that his purpose in being there was directly related to the CW. The CW subsequently confirmed that he knew this individual, and understood that his presence in the courtroom was to send him a message of intimidation on account of his cooperation with the government.

> Under cross-examination by government counsel during the hearing, Williams admitted that he was friends with the individual who had come into the courtroom for the CW's testimony. Williams' connection with the attempted intimidation of the CW was further confirmed by subsequent FBI investigation at the Federal Detention Center ("FDC"). The FBI established the existence of a contraband cell phone at the FDC and, through an examination of the calls placed by that phone, established that it was in Williams' possession or control. Among the calls placed by Williams' contraband cell-phone in the days leading up to the March 11, 2020 hearing were several to the phone number of the individual who attended the hearing to intimidate the CW.

App.41-42 (Government's Sentencing Memorandum).

On October 18, 2021, at the change of plea hearing, the Government presented Williams a guilty plea agreement, which stated in part:

c. The parties stipulate and agree that, as of the date of this agreement,

the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a).

d. The parties stipulate and agree that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.l(b).

App.20-34. Williams pleaded guilty after conducting an oral colloquy of the plea agreement with the district court.

On December 28, 2021, the Government filed its objections to the Presentence Report ("PSR") and argued for the two-level obstruction enhancement under USSG § 3C1.2. App.109-110 (Addendum to the Presentence Report). The Government argued that, at the Conflict Hearing, "Williams was responsible for the attempt to intimidate CW, a clear act of obstruction, and that an obstruction enhancement is warranted." *Id*. The Government further argued for denial of the acceptance of responsibility based on the obstruction of justice enhancement. *Id*. Williams objected to both Government requests. App.60-65 (Defendant's Sentencing Memorandum). Despite the Government's objection, probation declined to apply the obstruction enhancement in the Final PSR, and recommended Williams receive the three-level reduction for acceptance of responsibility as stipulated in the guilty plea agreement. App.111.

Sentencing took place on February 24, 2022. The Government argued that there were three instances that demonstrated that warranted the obstruction enhancement. The Government presented Agent Becker to testify regarding the first incident. App.124. She was present at the Conflict Hearing on March 11, 2020. *Id.* At that hearing, there was an individual, identified as William Wright, that was sitting in the courtroom behind Williams. App.125-126. When Banks was called to testify, Wright changed his position in the courtroom to be in Bank's line of sight. App.125. Through investigation, she determined that Williams had placed multiple calls to Wright in the days leading up to the Conflict Hearing. App.127-32.

On cross-examination, Agent Becker testified that the Conflict Hearing did not really have anything to do with trial. App.141. The hearing was not sealed, was publicly docketed, and the courtroom was open to the public. App.140. Agent Becker did not observe Williams and Wright communicating in any manner. App.142-43. Furthermore, Wright did not make any hand gestures or threats to Banks. App.143-44. Finally, there was no evidence that Williams told Wright to go to the hearing or to intimidate Banks. App.144.

Agent Becker also testified regarding the second incident. App.132. She was present at Arthur Rowland's trial and observed two individuals, Stephen Jennings and Mr. Griffin, come into the courtroom when Banks was testifying. App.132-36.

Banks told her that Jennings was an associate of his, Rowland, and Williams. App.137. Griffin was an associate primarily to Williams. *Id.* Agent Becker explained that she could not explain precisely when the men arrived, and the district court interjected:

> And to that point, and as we'll talk about further, in addition to the agent's testimony and everything I'll learn through the Government, keep in mind that I can see exactly what's going on, exactly who is here, exactly who isn't, exactly when they come, and exactly when they go. And there's only one other person that can see everything I can see, and that's a witness if they're testifying. But usually, they don't have the luxury of scanning the crowd. I do.

App.133.

On cross-examination, Agent Becker testified she did not observe Jennings or Griffin make any hand gestures or threats to Banks. App.145. She testified that, by cooperating, Banks was providing information regarding other individuals' criminal activities that were not involved in this case. App.146-47. Wright, Jennings, and Griffin had extensive criminal histories. App.147.

Finally, Agent Becker testified regarding the third incident. App.138. Teddy Akwaboah told her that an individual at the Federal Detention Center ("FDC") had his guilty plea and sealed cooperation addendum and was showing it to other inmates. *Id.* She instructed the FDC staff to search Williams' and Rowland's cells. *Id.* They found some handwritten notes in Rowland's cell and, in Williams' cell, an unsealed portion of Akwaboah's plea agreement. App.139. The Government

produced a transmittal letter indicating that the sealed and unsealed portions of the plea agreement were sent to the defense counsels. App.139-40.

On cross-examination, Agent Becker testified that Williams was not one the inmates that threatened Akwaboah. App. 148. Numerous inmates were interviewed, and nobody stated that Williams instructed them to approach Akwaboah. *Id.* She admitted that there was no evidence that the addendum was provided by Williams. App.149. Regardless, there was no protective order preventing its disclosure. App.150. Agent Becker testified that Rowland was in the SHU when he was searched, and the FDC does not typically allow an inmate to take their discovery with them. App.151. However, Rowland was not in the SHU at the time that the addendum was provided to defense counsels. App.156. She did not know whether Rowland ever had a copy of the addendum. App.151. There were allegations of intimidation by Rowland. *Id.*

Akwaboah testified that on October 18, 2021, he was at the FDC when he saw another inmate return from court with papers in his hands. App.162-64. Afterwards, his cellmate came into his cell with a copy of the sealed cooperation addendum. App.165. A group of inmates tried to get into his cell but were unable to do so. App.165-66. Later, another inmate threatened him unless he provided him with drugs. App.168-69.

At the conclusion of the testimony, during argument, the district court

interjected himself as a witness to the first incident, stating:

> There was no evidence he actually intimidated Mr. Banks. Yes, there was. I saw it. What's that, four feet? I saw it. There was no hand movements, et cetera. True. Did he make a throat-slashing gesture? Nope. Did he put his fingers in the shape of a gun? Nope. Did he get up and shake his fist at him? No. He intimidated him. It was plain as day. It was blatant. It so blatant; my brain wasn't processing what my eyes were telling me was happening. And had I been more on the ball, I'd have had him pinched right there.
>
> And like I said earlier, kind of foreshadowing this for you as you were going to walk into the fire; no one saw what happened better than I did. And I saw what I saw. And what I saw was premeditated, very carefully scripted witness intimidation of the highest order. Period.

App.176-77. The district court further testified:

> But at that hearing an individual came into the courtroom. And he engaged in conduct that was so blatantly in an effort to intimate the witness that, as I said, that I had never seen before. And as I said, had I been more on the ball, I would have remedied it right then and there.
>
> He was seated, as Agt. Becker, whose testimony I credit because it corroborates my own memory, and I have a very clear memory of this because it's the only time anything like this has ever happened to me. I haven't forgotten it.
>
> When Mr. Banks took the stand, that man got over and made sure that Mr. Banks knew that he was focused on him. And when someone asking a question interrupted the line of sight, that man would go left or go right in a very blatant effort to send him a message.
>
> I firsthand saw it. There is no doubt what he was doing. None. And there is no doubt of the effect it had on the testifying witness because he turned to me in an effort to alert me to the problem. And I believe his then counsel Natashia (ph.) alerted me to the problem. The witness was rattled. It was very obvious.

App.187.

The district court again became a witness, with regards to the second incident, when he stated that the intimidation, "was quite obvious to the judge." App.180.

Defense counsel proffered that his normal practice was not to send sealed documents to clients, but he most likely sent Williams the unsealed guilty plea agreement. App.183.

Unsurprisingly, the district court credited his own memory to apply the obstruction enhancement and decline the downward departure for acceptance of responsibility. App.193-95. Thus, Williams' offense level increased five levels to 42, which made his advisory guideline range 360 to life. *Id*. Furthermore, the district court Ultimately, the district court imposed a sentence of 300 months. App.263.

On March 10, 2022, Williams filed a Notice of Appeal. App.1. On June 24, 2022, the Government filed a Motion to Enforce Appellate Waiver and for Summary Affirmance in this Court. On July 20, 2022, Williams filed a Response to [Government's] Motion to Enforce Appellate Waiver and for Summary Affirmance. On August 25, 2022, this Court denied the Government's request to enforce the appellate waiver in the guilty plea agreement.

## SUMMARY OF ARGUMENT

First, the Government breached the guilty plea agreement by arguing for the obstruction enhancement and consequently, denial of acceptance of responsibility, based on conduct that they were aware of at the time they offered acceptance of responsibility pursuant to the plea agreement. This constitutes a miscarriage of justice and voids the appellate waiver provisions.

Second, the district court erred when it applied the obstruction of justice enhancement and denied the acceptance of responsibility. There was no evidence that Williams instructed Wright to intimidate Banks by the mere fact that Williams had contacted Wright, he came to the courtroom, and he changed position to be in the line of sight of Banks when he testified. In addition, there was no evidence that Williams instructed Jennings and Griffin to intimidate Banks as there was no evidence that Williams had any contact with the two men, Williams had already plead guilty and had no motive to intimidate Banks, and there was no testimony of the men intimidating Banks whatsoever. Finally, the Government failed to prove that Williams supplied to sealed cooperation addendum to the inmates that threatened Akwaboah by the mere fact that the addendum was not amongst Williams' discovery when it was unknown whether it was ever provided to him.

Third, the district court abused its discretion by imposing a sentence based on clearly erroneous conclusions of alleged obstructive conduct as argued above.

Fourth, the district court erred when it provided what amounts to testimony as a witness concerning his observations that allegedly constituted obstruction. This was a violation of the Federal Rules of Evidence and deprived Williams of a fair and impartial hearing as the district court could not be cross-examined regarding contested issues of fact.

Finally, because the comments made during the sentencing by the district court would cause a reasonable person, knowing all the relevant facts, to harbor doubts about the judge's impartiality, the district judge should be recused from a resentencing should the matter be remanded to the district court.

Thus, for all of the foregoing blatant violations of Williams' rights to due process, justice demands that the judgment of sentence vacated and the matter be remanded to the district court, assigned to a new judge, with instructions on what evidence may be considered.

<u>**ARGUMENT**</u>

**A. The Government breached the plea agreement when they sought the obstruction enhancement after stipulating to acceptance of responsibility.**

### 1. Standard of Review

Whether the government breached the terms of a plea agreement, such as to invalidate an appellate waiver, is a question of law subject to plenary review. *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008).

### 2. Discussion

Appellate waivers are permissible where they are knowingly and intentionally entered into unless they work a miscarriage of justice. *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001). An appellate waiver is not enforceable if the government breached its obligations under the plea agreement. *Schwartz*, 511 F.3d at 405. The government's breach of a promise that induces a guilty plea violates due process. *Santobello v. New York*, 404 U.S. 257, 262 (1971).

"[P]lea agreements must be construed according to the general principles of contract law." *McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 95 (3d Cir. 2007). Once the plea agreement has been made, the government is expected to "adhere strictly to the terms of the bargain it strikes." *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir. 1989). This Court uses a three-step analysis in determining whether there has been a breach of a plea agreement: (1)

identify the terms of the agreement and the government's alleged improper conduct, (2) determine whether the government has violated its obligations under that agreement, and (3) fashion the proper remedy. *United States v. Davenport*, 775 F.3d 605 (3d Cir. 2015). The Davenport Court explained:

> At the outset, we determine "whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." *Id*. at 236 (quoting *United States v. Badaracco*, 954 F.2d 928, 939 (3d Cir. 1992)). "Reasonably understood" is a "purely objective" standard governed by the common law of contract. *United States v. Hodge*, 412 F.3d 479, 485–86 (3d Cir. 2005). Specifically, we look to the plain meaning of the plea agreement and eschew a "rigidly literal" interpretation of it. *Id*. at 486. And we give the benefit of any doubt to the defendant, given the government's "tremendous bargaining power" in negotiating such plea agreements, *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008), and the fact that the defendant, "by entering into the plea, surrenders a number of [his] constitutional rights…"

*Id*. at 609.

In the instant matter, the Government breached their agreement with Williams when they made a deal they had no intention of honoring. In analyzing the first *Davenport* prong, the terms of the agreement could not be clearer. The plain language of the guilty plea agreement, drafted and signed by the Government, stated: "[t]he parties stipulate and agree that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense." App.127.

Subsequently, the Government argued that, at the Conflict Hearing,

Williams "was responsible for the attempt to intimidate CW, a clear act of obstruction, and that an obstruction enhancement is warranted." App.109-10 (Government's PSR Objections); App.42 (Government's Sentencing Memorandum); App.170-72 (Transcript of Sentencing Hearing). The Government also requested that, due to this alleged obstructive conduct, Williams be denied the stipulated acceptance of responsibility. App.110-11 (Government's PSR Objections).

Under the second *Davenport* prong, the Government violated its obligations under the guilty plea agreement. The Government agreed to the acceptance of responsibility stipulation as of October 18, 2021. App.20-34. However, at that time, they were aware of the alleged obstructive conduct from the Conflict Hearing on March 11, 2020. As such, it was a violation of the terms of the agreement to offer a stipulation, and induce a guilty plea, and then request that the stipulation be denied based on conduct which they were already aware of when the agreement was signed.

The Government undoubtedly recognized the predicament they created as they suddenly, and without explanation, changed course and argued that this was one of the "extraordinary cases" warranting application of both the obstruction enhancement and acceptance of responsibility departure. App.197 (Transcript of Sentencing Hearing). Of course, the Government only came to this "realization"

after defense counsel pointed out the inconsistency of their objection and

disingenuous nature of their negotiating. App.61-62. (Defendant's Sentencing

Memorandum).

Under any theory of contract interpretation, the Government breached the

guilty plea agreement. No reasonable person, let alone a defendant bargaining for

years of his liberty, would believe the Government would stipulate to acceptance

of responsibility and then, after the plea, argue for it to be denied based on

previous allegations (that they were aware of). It is simply illogical.

The 8th Circuit dealt with an identical issue in *United States v. Collins*:

> Here, the government likewise impermissibly used Collins' pre-plea
> conduct to challenge acceptance of responsibility. At the time Collins
> entered his plea, the government agreed he qualified for the reduction.
> Its sentencing memorandum then referenced pre-plea phone calls from
> Collins to S.M. and Victim One as grounds to deny acceptance. The
> plea agreement authorized opposition to the adjustment only "if after
> the plea proceeding Defendant obstructs justice ... or otherwise engages
> in conduct not consistent with acceptance of responsibility." As we
> stated in Mosley, "[t]he more natural reading" of such a reservation
> clause "is that the government may contest the adjustment based on
> subsequent acts of the defendant that are inconsistent with the previous
> agreement that the defendant accepted responsibility." 505 F.3d at 809.
> Although the provision here arguably supports an interpretation that
> would permit the introduction of pre-plea conduct, we must construe
> ambiguity in a plea agreement against the government.

25 F.4th 1097 (8th Cir. 2022). Here, like *Collins*, the Government should not be

permitted to benefit from pre-plea conduct and any ambiguity must be resolved in

favor of Williams.

Under the final *Davenport* prong, Williams submits that the proper remedy is to invalidate the appellate waiver, to remand the matter to the district court for a new sentencing hearing, and to prohibit the Government from arguing pre-plea conduct in pursuing a sentencing enhancement or for any increase in sentencing. Anything less would constitute a clear miscarriage of justice as the Government blatantly breached the guilty plea agreement and violated Williams' rights to due process.

**B. The district court erred by applying the obstruction enhancement and denying the acceptance of responsibility departure.**

**1. Standard of Review**

A district court's interpretation of the Sentencing Guidelines is subject to plenary review, while its factual findings are reviewed for clear error. *Fumo*, 655 F.3d at 309.

**2. Discussion**

The obstruction of justice enhancement provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. §3C1.1. The Government bears the burden of proving obstruction by a preponderance of the evidence.

In the instant matter, the district court found that the Government proved that the obstruction of justice enhancement applied to Williams based on three incidents. App.193 (Transcript of Sentencing Hearing). Based on this, the district court refused to apply the downward departure for acceptance of responsibility. App.195. The acceptance of responsibility departure provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. §3E1.1. However, conduct resulting in an obstruction of justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *Id*. The district court committed clear error.

### 1. First Incident

The Government failed to prove that Williams instructed Wright to intimidate Banks. While it was circumstantially proven that Williams contacted Wright in the days leading up to the Conflict Hearing, there was no evidence that he instructed Wright to intimidate Banks, or even to attend the hearing. App.127-

32, App.144. And, at the hearing, Williams and Wright did not communicate at all. App.142-43.

In addition, there was no evidence that Wright attempted to intimidate Banks. He did not make any hand gestures, say anything, nor make any threats. App.143-44. Just because Wright changed positions in the courtroom, to be in Banks' line of sight, does not prove that he attempted to intimidate him. App.125. There was also no evidence proving that Banks actually felt intimidated (other than the impermissible "testimony" by the district court as discussed later).

Even if Wright attempted to intimidate Banks, it was just as likely that he did so for his own person reasons, and not at the behest of Williams. Banks was cooperating with the Government by providing information on criminal activity. App.146-47. Banks and Wright knew each other and, as Wright had a lengthy criminal record, he may have been worried about what Banks had to say about him. App.147.

Furthermore, as previously discussed, the Government breached the terms of the guilty plea agreement and it would be manifestly unfair to allow that breach, which induced a plea agreement, to form the basis of obstructive conduct. Thus, the district court committed clear error when it concluded that Williams obstructed justice.

### 2. *Second Incident*

The Government failed to prove that Williams instructed Jennings and Griffin to intimidate Banks. There was no evidence that Williams communicated with the men prior to the trial or advised them to be present. In addition, there is no evidence that the two men attempted to intimidate Banks as they did not make any threats to Banks. App.145. There was no evidence that Banks actually felt intimated. Furthermore, it was just as likely that the men were worried about what Banks may be saying during his cooperation with the Government as he knew them, and they had extensive criminal records. App.146-47. Finally, Williams had already pleaded guilty at the time of Rowland's trial and had no motive to intimidate Banks. Rowland, however, had obvious motive and he had other allegations of intimidation. App.151. Thus, the district court committed clear error when it concluded that Williams obstructed justice.

### 3. *Third Incident*

The Government failed to prove that Williams attempted to intimidate Akwaboah. Williams was not part of the group of inmates that threatened Akwaboah. App.148. Numerous inmates were interviewed, and nobody stated that Williams instructed them to approach Akwaboah. *Id.*

In addition, there was no evidence that Williams provided the sealed cooperation addendum to another inmate. App.149. The Government proved that

the addendum was provided to counsels for Williams and Rowland, but failed to prove that counsel provided the addendum to Williams. App.139-40, App.183.[1] The Government argued that the addendum must have come from Williams since he was in possession of discovery and Rowland was not. App.139. However, this was based on the mere speculation that counsel provided the addendum to Williams. Furthermore, the Government argued that Rowland did not have the addendum when he was searched, but he was in the SHU at the time where inmates were not typically allowed to bring their discovery with them. App.139, App.151. Rowland was not in the SHU, however, when the addendum was provided to counsels and, as such, could have received it. App.156. Agent Becker admitted, during cross-examination, that she did not know whether Rowland ever had a copy of the addendum. App.151. Thus, the district court committed clear error when it applied the obstruction enhancement and denied the acceptance of responsibility departure.

**C. The district court abused its discretion by imposing a sentence based on clearly erroneous conclusions.**

### 3.  Standard of Review

The standard of review of a district court's sentence is an abuse of

---

[1] Defense counsel proffered that his normal practice was not to send sealed documents to clients, but he most likely sent Williams the unsealed guilty plea agreement only. App.183 (Transcript of Sentencing Hearing).

discretion. *United States v. Tomko*, 562 F.3d 558, 565 (3d Cir. 2009).

### 4. Discussion

This Court analyzes a district court's sentence as follows:

> "Our review of a criminal sentence ... proceeds in two stages. First, we review for procedural error at any sentencing step, including, for example, failing to make a correct computation of the Guidelines range at step one, failing to rely on appropriate bases for departure at step two, or failing to give meaningful consideration to the § 3553(a) factors at step three." Id. (internal citations and quotations omitted). "If there is no procedural error, the second stage of our review is for substantive unreasonableness, and we will affirm the sentence unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Id. (quoting Tomko, 562 F.3d at 568) (internal quotation omitted).

*Fumo*, 655 F.3d at 308. A district court abuses its discretion where its sentence is based "on a clearly erroneous factual conclusion or an erroneous legal conclusion." *Tomko*, 562 F.3d at 567-568.

Here, the district court erred when it considered, in fashioning a sentence, the alleged obstructive conduct. Specifically, the district court stated:

> I have never had anyone bring it into my courtroom, never. And what Mr. Williams did by bringing that man into that courtroom, right in front of my face, was worth more than a two-level enhancement. Because that was an attack on this court, on the criminal justice system, and on everything we do. I have never had that done. I couldn't believe what I was seeing. And he did it again at the trial. And he did it again at the prison, but I spoke to that. I told you how much weight I put in all of that. I've never had that done.

And I have discretion, and I -- but what am I supposed to do with that? What am I supposed to with that? How do I overlook that? I don't know what else you can -- what's worse than that? What can you do, as a criminal defendant, that's worse than that? And he did it, and it was so freaking obvious. What am I supposed to do?

App.254-55.

As discussed previously, the district court's application of the obstruction enhancement was an error. Similarly, the district court's consideration, of the same alleged conduct, in fashioning the appropriate sentence was based on clearly erroneous factual conclusions and erroneous legal conclusions as previously argued. Thus, the district court abused its discretion by imposing a sentence based on clearly erroneous conclusions.

**D. The district court violated Williams' due process by improperly making himself a witness to alleged obstructive conduct.**

**1. Standard of Review**

The standard of review for a district court's alleged violation of a Federal Rule of Evidence is plenary. *United States v. Sokolow*, 91 F.3d 396, 402 (3d Cir. 1996).

**2. Discussion**

A judge may comment on proceedings, but he may not assume the role of a witness. *Quercia v. United States*, 289 U.S. 466, 470 (1933). The court may not act as the judge and as a witness. Fed.R.E. § 605. The Federal Rules of Evidence

outline some of the issues that may arise when the judge becomes a witness:

> The choice is the result of inability to evolve satisfactory answers to questions which arise when the judge abandons the bench for the witness stand. Who rules on objections? Who compels him to answer? Can he rule impartially on the weight and admissibility of his own testimony? Can he be impeached or cross-examined effectively?

*Id*.

In the instant matter, the district court made himself a witness for the Government when he "testified" regarding the physical acts and state of mind of persons unknown to him. With regards to the first incident, the district court stated:

> And what I saw was premeditated, very carefully scripted witness intimidation of the highest order. Period.
>
> And he engaged in conduct that was so blatantly in an effort to intimate the witness that, as I said, that I had never seen before…He was seated, as Agt. Becker, whose testimony I credit because it corroborates my own memory, and I have a very clear memory of this because it's the only time anything like this has ever happened to me…When Mr. Banks took the stand, that man got over and made sure that Mr. Banks knew that he was focused on him. And when someone asking a question interrupted the line of sight, that man would go left or go right in a very blatant effort to send him a message…I firsthand saw it. There is no doubt what he was doing. None. And there is no doubt of the effect it had on the testifying witness because he turned to me in an effort to alert me to the problem. And I believe his then counsel Natashia (ph.) alerted me to the problem. The witness was rattled. It was very obvious.

App.177, App.187-88.

The district court also "testified" regarding the second incident as well when he stated that the intimidation "was quite obvious to the judge." App.180.

As can be seen, the district court credited his own observations and

memories in determining whether Banks was intimidated. His observations even corroborated the testimony of the Government's main witness on the issue, Agent Becker. However, his "testimony" could not be contested through cross-examination, and he even prohibited defense counsel from challenging his testimony by repeatedly cutting him off. App.177. Williams was unable to question the district court on multiple areas ripe for cross-examination: whether he kept notes of his observations, why he did not pursue any legal actions if he witnessed such blatant witness intimidation, how he can be so sure of the state of minds of individuals he had never met before, did Banks specifically say anything regarding intimidation, and etc. The Government relied on the district court's unimpeachable testimony to meet their burden in proving the conduct constituted obstruction.

Although most of the case law related to Rule 605 deals with judges acting as an advocate at trial in a manner which could influence the jury, the impact in this matter is no less devastating. The district court's testimony and consideration of facts outside the sentencing record render the judge a constitutionally unfair finder of fact - an almost identical role to that played by a jury.

In acting as both judge and witness, the district court violated Williams's right to due process of a fair and impartial hearing. Furthermore, the district court's actions constituted a constitutionally impermissible appearance of partiality. *See United States v. Nickl,* 427 F.3d 1286 (10th Cir. 2005); s*ee also United States v.*

*Blanchard*, 542 F.3d 1133, 1148-1149 (7th Cir. 2008) (holding district judge comments on his own personal observation of the defendant violated Rule 605 by "'add[ing] new evidence which the prosecution was otherwise unable to establish'"). Thus, the district court violated the Federal Rules of Evidence and infringed on Williams' right to due process by improperly making himself a witness to contested facts.

**E. The district judge's conduct created an appearance of bias which requires a recusal for a resentencing hearing.**

**F. Standard of Review**

"Where a party has not requested that the district judge recuse himself or herself during proceedings in the district court, we review a recusal argument made on appeal for plain error." *United of Omaha Life Ins. Co.*, 360 F.3d at 166.

**G. Discussion**

The federal recusal statute, 28 U.S.C. § 455, provides that: "(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned...." Subsection (a) covers all types of bias and prejudice, and it requires evaluation on "an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (emphasis in original).

The district court's statements cited herein constitute impermissible witness testimony and evidence from outside the sentencing record. Furthermore, the district court erred in concluding that Williams engaged in obstructive behavior (or at the very least considered evidence from the first incident which should be impermissible as it was due to the Government's breach of the plea agreement).

Reviewing the district court's testimony, which was clearly considered as evidence, there is no question that a reasonable person would question the district court's impartiality deciding the sentencing issues raised herein at a resentencing hearing. The judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. *United States v. Cooley*, 1 F.3d 985, 992-993 (10th Cir. 1993).

Since the very purpose of § 455(a) is to promote public confidence in the justice system, the error here seriously affects the fairness, integrity, and public reputation of judicial proceedings. Thus, this Court should remand Williams' case and order reassignment to a new judge for resentencing.

## <u>CONCLUSION</u>

**WHEREFORE**, Appellant, Hakim Williams, respectfully requests that this Court grant Williams a new sentencing hearing in front of a different judge without the obstruction enhancement and with the acceptance of responsibility departure.


Respectfully submitted,


*/s Joseph Coleman*

Joseph L. Coleman, Esquire
Coleman Defense LLC
1717 Arch Street, Suite 320
Philadelphia, PA 19103
215-564-1634
joe@philadelphiadefense.com
PA ID # 312128
Attorney for Hakim Williams

Dated: January 31, 2023

## **RULE 32 CERTIFICATION**

Pursuant to Rule 32 of the Federal Rules of Appellate Procedure, I hereby certify that Appellant's principal brief has been printed in 14-point font. The brief contains fewer than 13,000 words.

By: */s/ Joseph L. Coleman*
      Joseph L. Coleman, Esquire
      Attorney for Appellant

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I, Joseph L. Coleman, Esquire, do hereby certify that I am a member in good

standing of the bar of the United States Court of Appeals for the Third Circuit.

By: *<u>/s/ Joseph L. Coleman</u>*
Joseph L. Coleman, Esquire
Attorney for Appellant

## <u>CERTIFICATE OF IDENTICAL COMPLIANCE</u>

I, Joseph L. Coleman, Esquire, do hereby certify that the paper copies of this

brief will be identical to this electronically filed brief.

By: */s/ Joseph L. Coleman*
Joseph L. Coleman, Esquire
Attorney for Appellant

33

## <u>CERTIFICATE OF VIRUS CHECK</u>

I, Joseph L. Coleman, Esquire, do hereby certify that this electronic file was

checked for viruses and found to be virus free.

By:   */s/ Joseph L. Coleman*
       Joseph L. Coleman, Esquire
       Attorney for Appellant

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph L. Coleman, Esquire, do hereby certify that on this date a true and correct copy of the foregoing has been filed electronically and is available for viewing and downloading from the ECF system. All parties have entered their appearances for this matter through the ECF system.


By:   */s/ Joseph L. Coleman*
       Joseph L. Coleman, Esquire
       Attorney for Appellant